IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

CASE NO. _____

| | | |
|---|---|---|
| VADA MITCHELL and<br>DAISY WEBB, for Themselves<br>And on Behalf of All Others<br>Similarly Situated, | )<br>)<br>)<br>) | |
| | ) | |
| Plaintiffs, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | |
| | ) | |
| WELLS FARGO BANK, N. A.<br>and WELLS FARGO & CO., | )<br>) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## CLASS ACTION COMPLAINT

Plaintiffs VADA MITCHELL and DAISY WEBB, by and through their attorneys of record, file this, their Complaint on behalf of themselves and all persons initially similarly situated within the United States and also on behalf of the General Public of the State of Texas. This Complaint is based upon the current information and belief of the Plaintiffs, who hereby allege as follows:

## PARTIES

1.     Plaintiffs VADA MITCHELL and DAISY WEBB, are and have been at all times material to the allegations in this Complaint residents of Harris County in the State of Texas, and are otherwise *sui generis*.

2.     The Currently Unnamed Plaintiffs are those individuals that have been harmed, along with Plaintiffs VADA MITCHELL and DAISY WEBB, by Defendants Wells Fargo Bank, N.A. and Wells Fargo & Co.'s, ("Wells Fargo") acts and practices, specifically those

acts and practices related to Wells Fargo's abuse of contract rights and its unfair, deceptive, unconscionable, bad faith, and collection of excessive overdraft charges and account fees through: the collective grouping over two or more days of valid non-overdrafting transactions with overdrafting transactions, that are held back and systematically processed in one batch that is designed to create multiple overdrafts that would not have otherwise transpired, and thereby create multiple overdraft fees that would not otherwise exist; the authorization of additional customer overdrafting transactions when Wells Fargo has actual knowledge an account is overdrawn so that the additional transactions ensure more overdraft fees for Wells Fargo; the active promotion and inducement of customers to abandon paper checks and check registers in favor of a completely electronic and debit card bank/merchant-customer interface; the deliberate frustration of customer attempts to receive accurate account balance information through this promoted bank/merchant-customer interface; and the lure of customers into opening "free" checking accounts that are in no way "free". It is anticipated that hundreds of thousands of potential members of the Class of Currently Unnamed Plaintiffs will be revealed through the discovery process.

3.      Defendant, Wells Fargo Bank, N.A., and its related entities consist of one of the largest banking institutions in the country. Wells Fargo Bank, N.A., a foreign corporation organized and existing under the laws of Minnesota, provides banking services to millions of customers, including Plaintiffs. Wells Fargo Bank, N. A. may be served via its registered agent, CSC-Corporation Service Company, CSC-Lawyers Incorporating Service, 701 Brazos Ste 1050, Austin, TX 78701-3232.

4.      Defendant Wells Fargo & Co., a foreign corporation organized and existing under the laws of Delaware, may be served with process by serving the Texas Secretary of State,

Geoffrey S. Connor, P.O. Box 12079, Austin, Texas 78711-2079, as its agent for service, because this defendant engages in business in Texas but has not designated or maintained a registered agent for service of process in Texas. Tex. Civ. Prac. & Rem. Code 17.044(a)(1); Tex. Bus. Corp. Act art. 8.10(B); Tex. Rev. Civ. Stat. art. 1396-8.09 (B). Thereafter, the Secretary of State shall immediately forward to the defendant by certified mail return receipt requested a copy of the process to defendant at its home office address 420 Montgomery St., San Francisco, CA 94104. Wells Fargo & Co. is the parent company of Wells Fargo Bank, N.A., and upon information and belief, at all material times hereto, Wells Fargo & Co. supervised, operated, trained, and otherwise exercised control and/or had the right to control and/or acted in concert with Wells Fargo Bank, N.A.

## JURISDICTION AND VENUE

5.    Pursuant to 28 U.S.C. § 1332(d)(2), this Court has jurisdiction over the claims brought by the Plaintiffs for the following reasons:

    a.   Plaintiffs are residents of and citizens of the State of Texas and reside in Harris County.

    b.   Wells Fargo Bank, N.A. is a national bank organized pursuant to the National Bank Act. Wells Fargo Bank, N.A.'s headquarters and its principal place of business is located in San Francisco, California, and Wells Fargo Bank, N.A. is, therefore, a citizen of the State of California.

    c.   Wells Fargo & Co., the parent corporation, is incorporated in Delaware and maintains headquarters and its principal place of business in San Francisco, California and is, therefore, a citizen of the State of California.

d. In addition, the amount in controversy, upon information and belief, in this matter exceeds $5 million, exclusive of interest and costs, the jurisdictional requirement set forth at 28 U.S.C. § 1332(d)(2).

e. In determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative class members are aggregated. 28 U.S.C. § 1332(d)(6).

f. Plaintiffs anticipate hundreds of thousands of potential members of the Class of Currently Unnamed Plaintiffs will be revealed during the discovery process. There are at least 200,000 potential members of the class to represent.

g. Each member of a class of 200,000 would need to incur only one $26 insufficient funds fee as result of the alleged practices described in the Complaint for the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) to be substantially exceeded. The overdraft fees charged by Defendant typically exceed $26 and are usually $35 per transaction. Alternatively, in a class of 72,000 members, each class member need only incur two $35 insufficient funds fees as a result of the alleged practices described in the Complaint for the amount in controversy requirement to be exceeded.

h. In addition, Plaintiffs seek more than just compensatory damages. Plaintiffs also seek attorney's fees and injunctive relief, both of which may be considered in determining the amount in controversy.

6.     For the reasons stated above, this Court has original diversity jurisdiction in this case pursuant to 28 U.S.C. § 1332(d)(2) because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one plaintiff is diverse from at least one defendant.

7.     Venue is also proper in this district pursuant to 28 U.S.C. 1391.  Venue is proper in this district because Wells Fargo is registered to do business in the State of Texas and in fact is doing business in the State of Texas.  Wells Fargo has sufficient minimum contacts with the State of Texas, including Harris County, and intentionally avails itself of the customers and markets within the State of Texas through the promotion, marketing, sale and service of checking and savings accounts in this State.  This purposeful availment renders the exercise of jurisdiction by Texas courts over it and its affiliated and related entities permissible under judicially accepted notions of fair play and substantial justice.  Moreover, Wells Fargo is subject to the general jurisdiction of this Court because it has extensive facilities and operations within Texas in Harris County.  Wells Fargo is subject to personal jurisdiction in the State of Texas.  All of the transactions between the named Plaintiffs Vada Mitchell and Daisy Webb and Defendants that give rise to this claim occurred in Harris County.  This district is one in which a substantial part of the events or omissions giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

8.     Wells Fargo is in the business of providing a variety of banking services.  Wells Fargo advertises its services through all outlets of the media.

9.     Plaintiffs rely on Wells Fargo to provide Plaintiffs with a checking account and to safeguard monetary funds deposited thereto by Plaintiffs.

10.     Wells Fargo has promoted its checking account services through promotional and marketing materials published and issued through the media and in brochures available at Wells Fargo's banking centers.  Wells Fargo also advertises its checking account services on its website.

11.     Plaintiffs Vada Mitchell and Daisy Webb became aware of the plans and accounts offered by Wells Fargo through advertisements, and in particular, Wells Fargo's advertisements for "free" checking accounts.  Plaintiffs have had a checking account with Wells Fargo for more than one year.  When opening his accounts with Wells Fargo, Wells Fargo imposed contracts and agreements upon Plaintiffs, certain terms of which Wells Fargo breached, or, in the alternative, abused the rights conveyed by the terms of its contracts and agreements.

12.     Customers, including Plaintiffs, reasonably rely on Wells Fargo to ensure that charges are posted to customers' accounts in a manner that does not injure the customers.  Instead, Wells Fargo routinely enforces a policy whereby charges and debits are posted to customers' accounts in a date, time, and amount order it has systematically devised to maximize the number of overdraft transactions and the number of overdraft fees it can collect from customers.  The order chosen by Wells Fargo's systems does not follow customers' actual dates and times of making the transactions.  Wells Fargo commonly structures its customer processing so that a number of transactions are held back in a batch of transactions and debits, not all of which would create an overdraft in a particular customer's account.  These "held back transactions" are not always reflected in customers' available balance, thereby giving the customer a false impression that there is more money in his or her account than there actually is, and encouraging the customer to continue making transactions.  After holding these

transactions, Wells Fargo takes the batch and re-orders it so that the largest individual transaction amount processes first, and creates an overdraft and overdraft fee. Wells Fargo then continues to manipulate the remaining debits in the batch and processes each one to create additional overdrafts and escalating overdraft fees. Commonly, these later processed debits would not have created an overdraft had they been processed in the order or time they were made, or, alternatively, if Wells Fargo had processed the batch with the smallest amounts being sent through first. Instead Wells Fargo purposely puts the largest transactions through first to create its fee maximizing scheme and result.

13. Customers, including Plaintiffs, are responsible customers at the time they transact the earlier, non-overdraft creating transactions. The customer requested a good or service from a merchant. The customer tendered payment by Wells Fargo's debit card, and the merchant in turn provided that good or service to the customer. That transaction was complete for the parties to the transaction and did not create an overdraft in the customer's account at the time it was transacted and completed. Or, a customer requested cash from Wells Fargo's ATM network and Wells Fargo authorized that customer to receive the cash requested. Again, the transaction was then complete between the parties and did not create an overdraft at the time it was made. Wells Fargo subsequently manipulates the processing of these transactions to make the customer pay an overdraft fee for a misdeed he or she was not committing at the time the transaction was completed.

14. Customers, including Plaintiffs, reasonably rely on Wells Fargo to provide customers with accurate balance information. Wells Fargo actively dissuades its customers from using paper checks, and their accompanying check registers. Instead Wells Fargo actively promotes and encourages the use of its debit cards and systems such as on-line bill

paying to create a completely electronic bank/merchant-customer interface. Wells Fargo's advertising reflects its position that customers should transact all of their business electronically, and promises customers that their lives will be happier and more efficient if they use Wells Fargo's electronic debiting and payment means. But in return, Wells Fargo actively provides false or misleading balance information to these customers, including Plaintiffs, that in turn deceives these customers into making additional transactions that, in turn, will generate even more overdraft fees for Wells Fargo. Customers are deceived in two ways. In the first scheme, customers are shown a positive balance by Wells Fargo at an ATM, or on Wells Fargo's own customer access web site, or through another balance inquiry device, and the customer makes a transaction in reliance on that balance. But in reality, the balance shown does not reflect all of the transactions made by the customer because Wells Fargo is hiding earlier transactions made by the customer in its batch pool, or had chosen not to update the balance shown to reflect all transactions outstanding. Thus, the balance the customer relied on to complete an otherwise "good" transaction was based on a falsely positive indication of the customer's balance as shown to the customer by Wells Fargo itself. In the second scheme, Wells Fargo, with actual knowledge that a customer is overdrawn or has transacted debits it knows will create multiple overdrafts through its batch processing scheme, continues to approve additional, subsequent transactions for the customer at point of purchase devices. Thus, Wells Fargo, with actual knowledge of outstanding transactions that have already created a negative balance in a customer's account, encourages the customer to incur even more overdraft charges by approving — rather than prudently declining — subsequent debit card purchases and other electronic transactions. These schemes create more overdraft fees for Wells Fargo and injure the customer, including Plaintiffs.

15. But even the most diligent customer keeping meticulous track of every transaction is thwarted from knowing the true status of his or her account because of the various ATM and other transaction fees that are deducted from balances for the convenience of using Wells Fargo's preferred all-electronic, paperless, customer accounts. Thus, Wells Fargo is penalizing even the most responsible customer, who cannot, under Wells Fargo's scheme, ever truly know the running balance of his account, and cannot rely on Wells Fargo to provide an accurate balance to him or her.

16. The effect of Wells Fargo's deceptive balance information and false positive transaction approvals is to encourage additional spending by customers, including Plaintiffs, that thereby generate more overdraft fees for Wells Fargo. This means that when Wells Fargo knows the customer actually has no money in his or her account, that Wells Fargo is then lending money to the customer for transactions the customer would otherwise not be able to make.

17. The allegations of paragraphs eleven through sixteen, above, represent unfair, deceptive, and fraudulent practices that, even if the terms of Wells Fargo's account agreement could be construed to allow them, would still be an abusive and unlawful use of its contract powers. Wells Fargo's account processing practices ensure that a customer's account is first emptied, and then subsequent, smaller charges result in multiple overdraft fees and consequently increased service fee revenues for Wells Fargo. Even if Plaintiffs were given materials containing language that could possibly be interpreted to authorize or disclose Wells Fargo's practices as described in paragraphs eleven through sixteen above, any such notice or authorization was inadequate and ineffective. Plaintiffs and those similarly situated that have incurred similar charges were not sufficiently made aware of Wells Fargo's fraudulent,

deceptive, unfair, and abusive business practices.  Processing and charging a customer account in this manner, without adequate notice, is inherently deceptive, unfair, and prohibited by state law.

18.     An example of Wells Fargo's fraudulent, deceptive and unfair business practices can be seen in Plaintiffs' March 2009 transactions.  *See* Exh. 1.  On March 21, 2009, Plaintiffs had a balance of $73.50. (*Id.* at Custom Management Checking statement, March 21, 2009 through April 21, 2009 at Page 1 of 5).   On March 23, 2009, Wells Fargo processed two transactions: a Citifinancial loan payment for $357.82 and a check card transaction from March 21, 2009 for $8.95.  (*Id.* at Custom Management Checking statement, March 21, 2009 through April 21, 2009 at Page 2 of 5). Despite the fact that the $8.95 check card transaction was made two days prior, Wells Fargo processed the Citifinanical payment first.  Wells Fargo, by holding and re-ordering the transactions, overdrew Plaintiffs' account.  The smaller transaction was made when Plaintiffs were not overdrawn.  The Plaintiffs incurred $70.00 of overdraft charges. The smaller transaction was valid at the time of the transaction and would not have created an overdraft but for Wells Fargo's manipulative and deceptive scheme because Plaintiffs' account had sufficient funds to cover that transaction when it was made. If the smaller transaction from March 21st was processed first, the Plaintiffs would not have been charged the additional $35.00 overdraft fee.

19.     Another clear example of Wells Fargo's deceptive and abusive practices can be seen in the March  2009 timeframe.  *See* Exhibit 1.  On March 23, 2009 the Plaintiffs had a negative account balance of $293.27, but Wells Fargo continued to allow the Plaintiffs to use the Check Card for purchases on March 24, 2009.  (*Id*. at Custom Management Checking statement, March 21, 2009 through April 21, 2009 at Page 2 of 5).  Wells Fargo processed the

two Check Card transactions on March 25th for the amounts of $15.99 and $11.99. The transactions resulted in overdraft fees of $70.00. *Id.*

20. A further example of Wells Fargo's costly convenience can be seen in the May 2009 timeframe. *See* Exhibit 1. On May 22, 2009, the Plaintiffs had an account balance of $175.96. (*Id.* at Custom Management Checking statement May 22, 2009 through June 19, 2009 at Page 1 of 7). Wells Fargo processed seven transactions of May 26th: a deposit of $85.00, a deposit of $100.00, stop payment fee of $29.00, Citifinancial Loan Payment of $357.82, POS purchase from May 23rd of $43.27, Check #533 for $16.56, and a Check Card purchase from May 23rd for $9.00. *Id.* at Custom Management Checking statement May 22, 2009 through June 19, 2009 at Page 2). After the deposit and stop payment fee, Wells Fargo processed the Citifinancial payment first, which overdrew Plaintiffs' account, and then processed the three smaller transactions. This resulted in $140.00 in overdraft fees. *Id.* The $43.27 and $9.00 transactions were made on May 23, 2009, when Plaintiffs were not overdrawn. Wells Fargo could have cleared the two earlier transactions first and only charged Plaintiffs a $70.00 fee. Plaintiffs should not have been charged the additional overdraft fees of $70.00 for the two transactions that would have cleared.

21. As a result of these transactions and charges, Wells Fargo has improperly deprived Plaintiffs, and those similarly situated, of significant funds. Plaintiffs were wrongfully charged overdraft fees for numerous transactions that were valid when made, and charged overdraft fees for transactions that Wells Fargo should have prudently declined when it had actual knowledge that approval would create an overdraft in Plaintiffs' account. Wells

Fargo's method of processing transactions is a scheme to maximize the number of overdraft fees it can collect, unlawfully taking and using Plaintiffs' property for its own gain.

**CLASS ACTION ALLEGATIONS**

22.     Pursuant to Fed.R.Civ.P. 23, the Class Plaintiffs bring this action both individually and on behalf of all persons similarly situated that suffered injuries as a result of Wells Fargo's fraudulent, deceptive, unfair, and abusive business practices as described above and propose a class defined as: Customers of Wells Fargo who have been charged overdraft fees as a result of Wells Fargo's processing as described herein whereby transactions are batch processed in an order and allowed in a manner that maximizes overdraft fees, whereby customers are not given accurate account information, and/or whereby Wells Fargo allows transactions without satisfactory funds in an account pursuant to the scheme described herein. Plaintiffs Vada Mitchell and Daisy Webb are not the only customers to whom Wells Fargo has applied its fee maximizing batch processing scheme. These are Wells Fargo's standard, undisputed practices wherever it maintains customer accounts in the United States.

23.     The Class of persons or entities described above is so numerous that joinder of all members by name in one action is impracticable. All injuries sustained by any member of the Class arise out of the conduct of Wells Fargo in wrongfully debiting and manipulating the accounts of Plaintiffs and those similarly situated.

24.     Important questions of law and fact exist which are common to the entire Class and predominate over any questions that may affect individual Class Members in that Wells Fargo has acted on grounds generally applicable to the entire Class. It will be shown that the cause of the fees charged to other customers, namely Wells Fargo's transaction processing

scheme to maximize its ability to collect overdraft charges, is the same for hundreds of thousands of customers identically situated to the named Plaintiffs.

25.    All questions as to the actions attributable to Wells Fargo herein are similarly common.  A determination of liability for such conduct will also be applicable to all members of the Class.

26.    The claims of the Class representative, Plaintiffs Vada Mitchell and Daisy Webb, are typical of the claims of the Class in that Plaintiffs suffered damages as a result of Wells Fargo's fraudulent, deceptive, unfair, and abusive business practices.

27.    Plaintiffs will fully and adequately represent and protect the interests of the entire Class because of the common injuries and interests of the Class Members and the singular conduct of Wells Fargo as to all Class Members.  Plaintiffs have retained counsel competent and experienced in the prosecution of class action litigation.  Plaintiffs have no interest that is contrary to or in conflict with those of the Class they seek to represent.

28.    A class action is superior to all other available methods for fair and efficient adjudication of this controversy.  There is no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

29.    Class certification is also appropriate in this action because:

    a.    Pursuant to Fed.R.Civ.P. 23(b)(1), the prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications concerning the subject of this action, which adjudications could establish incompatible standards for Wells Fargo under the law alleged herein.

b. And/or, in seeking injunctive relief from the Wells Fargo's practices alleged herein, pursuant to Fed.R.Civ.P. 23(b)(2) Wells Fargo's actions in wrongfully assessing overdraft fees is applicable to the Class.

c. And/or, pursuant to Fed.R.Civ.P. 23(b)(3) in seeking monetary damages the questions of law and fact at issue are common to all members of the Class predominating over individual issues, and a Class Action is the superior method of adjudicating this controversy as individual claims for small individual amounts of fees would be impractical.

**REQUEST FOR CLASS RELIEF**

**FIRST CLAIM FOR CLASS RELIEF**

**BREACH OF CONTRACT**

30. Plaintiffs incorporate by reference the allegations in Paragraphs 1-29 above as if set forth verbatim herein.

31. Under the common law, good faith and fair dealing is an element of every contract. Every contract imposes upon each party a duty of good faith and fair dealing in its performance. Texas law likewise imposes the duty of good faith and fair dealing when the parties to a contract hold unequal bargaining power, which is exactly the case here. Good faith in contracting is the obligation to preserve the spirit of the bargain rather than merely the letter, the adherence to substance rather than form. The law calls for substantial compliance with the spirit, and not the letter only, of a contract in its performance. Evasion of the spirit of the bargain and abuse of a power to specify terms have been judicially recognized as examples of bad faith in the performance of contracts.

32.     Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified.  But the obligation goes further; bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty.  A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, abuse of rights given by the terms, and interference with or failure to cooperate in the other party's performance.

33.     Where an agreement permits one party to unilaterally determine the extent of the other's required performance, an obligation of good faith in making such a determination is implied.  To the extent Wells Fargo maintains that it may unilaterally choose whether to impose overdraft charges by posting transactions in any order Wells Fargo wishes and by unilaterally deciding whether to honor requested transactions when customers have insufficient funds, this purports power must be exercised in good faith.  Because the occurrence, amount, and frequency of overdraft charges are set unilaterally by Wells Fargo, Wells Fargo has an obligation to impose overdraft charges on customers' bank accounts in good faith.  Wells Fargo has breached this obligation by intentionally delaying and rearranging the posting of transactions to accounts in order to maximize the amount of over draft charges.  For example, Wells Fargo has the ability to post debit card transactions to checking accounts immediately because Wells Fargo is made aware of debit card transactions as they occur due to the electronic nature of debit card transactions.  Instead of posting debit card transactions to accounts immediately, however, or even posting debit card transactions in chronological order,

Wells Fargo chooses to delay the posting of these transactions for many days and posts these transactions in an order that maximizes the imposition of overdraft charges.

34.   In breach of its duties of good faith and fair dealing, Wells Fargo has assessed excessive, unreasonable and unnecessary overdraft charges against Plaintiffs, Class Members, and the General Public.  These overdraft charges are not set in accordance with the reasonable expectations of the parties.

35.   Plaintiffs seek a judicial declaration determining that the charges actually set by Wells Fargo are not consonant with Wells Fargo's duties of good faith and fair dealing. Plaintiffs also seek compensatory damages resulting from Wells Fargo's breach of its duties of good faith and fair dealing.  Plaintiffs further seeks all relief allowed or deemed appropriate by this Court, including attorney fees and costs, for Wells Fargo's bad faith connected with and arising out of Wells Fargo's conduct in holding back and rearranging transactions in order to maximize overdraft charges.

## SECOND CLAIM FOR CLASS RELIEF

## ABUSE OF RIGHTS

36.   Plaintiffs incorporate by reference the allegations in Paragraphs 1-29 above as if set forth verbatim herein.

37.   Wells Fargo inequitably uses and abuses the powers granted to it by its non-negotiated customer agreements.

38.   By engaging in a scheme to stretch the parameters of its account agreements to manipulate transaction processing to maximize profits, Wells Fargo is unreasonably exercising its contract rights to the harm of Plaintiffs and others similarly situation.  The abusive exercise

of this power thus harm Plaintiffs by wrongfully depriving them of property by creating more overdraft fees than are necessary.

39.   Wells Fargo is abusively exercising this contract power to maximize its profits rather than to efficiently manage its processing operations or provide convenience to Plaintiffs or those similarly situated.

40.   Plaintiffs seek a judicial declaration that Wells Fargo is abusing the powers conferred on it by contract, and seeks compensatory damages flowing from the abuse of that power.  Plaintiffs further seek all relief allowed or deemed appropriate by this Court for Wells Fargo's abuse of rights connected with and arising out of Wells Fargo's conduct in chronologically rearranging transactions in order to maximize overdraft charges.

<u>**THIRD CLAIM FOR CLASS RELIEF**</u>

<u>**UNCONSCIONABILITY**</u>

41.   Plaintiffs incorporate by reference the allegations in Paragraphs 1-29 above as if set forth verbatim herein.

42.   Even if Wells Fargo's customer debit processing and overdraft fee assessment procedures are authorized by the letter of its customer agreements and state law, in practice Wells Fargo's implementation of those procedures is unconscionable.  Neither the law nor any customer agreement can be construed to allow factors the agreement is "silent" on to authorize abuse of a customer and his property.

42.   Upon information and belief, Wells Fargo has included in its boilerplate Disclosures language to the effect that:

> Wells Fargo may pos*t Items* presented against the Account in any order Wells Fargo chooses, unless the laws governing your Account either requires or prohibits a particular order. For example, Wells Fargo may, if it chooses, post *Items* in the order of the highest

dollar amount to the lowest dollar amount. Wells Fargo may change the order of posting Items to the Account at any time without notice. If more than one *Item* is presented to Wells Fargo for payment on a day Wells Fargo determines there are sufficient funds to pay one or more but not all of the *Items*, the number of *Items* paid and the *Overdraft* and returned *Item* fees assessed may be affected by the order that Wells Fargo chooses to pay those *Items*.

Considering the great business acumen and experience of Wells Fargo when compared to Plaintiffs and those similarly situated, the great disparity in the relative bargaining power, the inconspicuousness and incomprehensibility of the contract language, the oppressiveness of the terms, and the absence of a meaningful choice of competing banking institutions, the commercial unreasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and similar public policy concerns, these provisions are unconscionable and therefore unenforceable as a matter of law.

43.    Here, Plaintiffs and those similarly situated are customers, not bankers.  Wells Fargo does not negotiate these terms with any customers.  Plaintiffs, like most customers, were not in a position to bargain for more favorable contract terms, nor were they able to experience the results of Wells Fargo's practices before enrolling in Wells Fargo's services.  With regard to the "surprise factor" of unconscionability, Plaintiffs and those similarly situated were not made aware of the effect of Wells Fargo's practices at the time the contract was entered into. Wells Fargo's agreements are thus procedurally unconscionable.

44.    Plaintiffs request an inquiry into the setting, purpose, and effect of these terms, including the basis and justification for delaying and chronologically rearranging transactions. The banking industry should not be immune from scrutiny.  The grossly excessive market price, the miniscule cost of the goods or services to Wells Fargo, the slight inconvenience imposed on Wells Fargo in extending credit, and the slight value of the overdraft service all demonstrate that Wells Fargo's method of maximizing overdraft charges is substantively

unconscionable. Combined with the absence of meaningful choice, the lack of sophistication of customers, and Wells Fargo's deceptive practices in rearranging and delaying transactions, the Court should strike down Wells Fargo's overdraft practices as unconscionable.

45. Wells Fargo has structured totally one-sided transactions. The absence of equality of bargaining power, open negotiation, full disclosure, and a contract which fairly sets out the rights and duties of each party demonstrate that the transaction lacks those checks and balances which would inhibit the charging of unconscionable fees. Each overdraft charge derived from Wells Fargo's rearrangement of transactions should be rescinded and refunded to Plaintiffs and those similarly situated.

## FOURTH CLAIM FOR CLASS RELIEF

## TROVER AND CONVERSION

46. Plaintiffs incorporate by reference the allegations in Paragraphs 1-29 above as if set forth verbatim herein.

47. Wells Fargo has, without adequate authorization, assumed and exercised the right of ownership over personal property belonging to Plaintiffs and those similarly situated, in hostility to the rights of Plaintiffs and those similarly situated, as described above. Plaintiffs and those similarly situated had title to funds in their specific and readily identifiable checking accounts and Wells Fargo wrongfully possessed said funds through its abusive, unfair, deceptive, and improper practices. These improperly assessed overdraft charges represent specific amounts of money from specified identifiable funds for use for specific purposes and represent conversion by Wells Fargo of the Plaintiffs' property.

48. As a direct and proximate result of the levy of improper overdraft charges and improper account transfers by Wells Fargo, Plaintiffs, Class Members and the General Public

have suffered damages. The damages proximately and directly resulting from such conduct, including actual, nominal, general and punitive damages should be taxed to Wells Fargo.

## FIFTH CLAIM FOR CLASS RELIEF

## UNJUST ENRICHMENT

49.     Plaintiffs incorporate by reference the allegations of Paragraphs 1-28 above as if set forth verbatim herein.

50.     A party cannot induce, accept or encourage another to furnish or render something of value to such party and avoid payment for the value received. As a result of the conduct described above — including the reordering of transactions and providing electronic balance and payment approval information that falsely indicates positive balances — Wells Fargo has been and will be unjustly enriched at the expense of the Plaintiffs, Class Members and the General Public. Specifically, Wells Fargo has been unjustly enriched by encouraging and allowing Plaintiffs and its customers to continue to incur debits and charges when in reality there would be a negative balance, and then rearranging those transactions in order to maximize the number and amount of overdraft charges it can charge.

51.     In providing false balance information and then structuring transactions to create fees paid from Plaintiffs' property, Wells Fargo benefitted from the fees/property Plaintiffs conferred on Wells Fargo as a result of its transactional management scheme. Wells Fargo appreciated this benefit because the Plaintiffs' property added to Wells Fargo's revenues and profits. The retention of this benefit at the Plaintiffs' expense, without providing Plaintiffs' value for the benefit received is inequitable. Thus Wells Fargo has been unjustly enriched.

52.     Wells Fargo, the benefitted party, equitably ought to compensate Plaintiffs and those similarly situated for all excessive overdraft charges given the fact that no legal contract

authorized Wells Fargo's practices. Wells Fargo has received and is holding funds belonging to Plaintiffs and those similarly situated, which in equity and good conscience Wells Fargo should not be permitted to keep but should be required to refund to Plaintiffs and those similarly situated.

**WHEREFORE,** Plaintiffs Vada Mitchell and Daisy Webb and the Class Plaintiffs pray:

(1)     For certification of this matter as a class action lawsuit to proceed on behalf of the class of all Currently Unnamed Plaintiffs as described herein after suitable discovery has been completed;

(2)     For injunctive relief enjoining and prohibiting the batch processing scheme, the practice of disseminating misleading information, and the practice of allowing and handling transactions to maximize overdraft fees as set forth herein;

(3)     For restitution;

(4)     For an award of such damages as are authorized by law;

(5)     For an award of all reasonable costs and attorneys' fees incurred by Plaintiffs;

(6)     For declaration relief as described above;

(7)     For trial by jury of all matters; and

(8)     For such other and further relief as the Court may deem just and equitable.

DATED this 12th day of August, 2009.

Respectfully Submitted,

**BARON & BUDD, P.C.**

By: /s/    Denyse Clancy_____
       Bruce Steckler, State Bar No. 00785039
       Attorney in Charge
       Southern District of Texas Bar No. 19596

       Russell Budd, State Bar No. 03312400
       S. Ann Saucer, State Bar No. 00797885
       Denyse Clancy, State Bar No. 24012425
       3102 Oak Lawn Avenue, Suite 1100
       Dallas, Texas  75219
       Telephone: (214) 521-3605
       Fax: (214) 520-1181